UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

A.A., et al.,

     Plaintiffs,

     v.                       Case No. 3:21-CV-378 JD

WARSAW COMMUNITY SCHOOL
CORPORATION, et al.,

     Defendants.

## OPINION AND ORDER

Kasha Harris filed suit on behalf of her daughter, A.A., a high school student who was asked to go to the back of the school bus line after repeatedly cutting the line the same week. Ms. Harris alleges the actions of the school bus driver were motivated by racial animus and brought Equal Protection Clause and Title VI claims against the bus driver, Laura Brito, the school, and the director of transportation, Mark Fick ("Defendants"). The undisputed facts and video evidence support Defendants' version of events, and Plaintiffs have offered no evidence sufficient to support an inference of racial animus on the part of any defendant. As such, the Court GRANTS Defendants' Motion for Summary Judgment (DE 35).

### A. Facts

Except where noted, these facts are taken from the undisputed statement of facts (DE 38). In March 2021, A.A. was a student at Warsaw Community High School. She rode the bus to get to school each day, and her bus driver was Lauren Brito. A.A. and her brother were picked up directly outside of their house, and about eight other students boarded at the same stop. A.A. and her brother are African American; two of the other students boarding were also African

American. All students riding Warsaw Schools buses have assigned seats by policy, and Ms. Brito assigned seats on her bus during A.A.'s tenure as a rider. (DE 36-5 at 26–27.)

A.A. and her brother had a history of being late and missing the bus. When the siblings missed the bus, Ms. Harris would call the school transportation department and demand her children be picked up. Invariably, the department sent a bus to pick up the siblings. This occurred with such frequency that the bus was re-routed so the siblings could see the bus as it approached. (DE 36-3 at 25.) In early March, other students boarding at the stop complained to Ms. Brito about A.A. cutting the line. Ms. Brito discussed the issue with her trainer and was advised a proper course of action was to ask the student to go to the back of the line. During the week of March 8, 2021, Ms. Brito observed A.A. cutting other students in line when boarding the bus. In response, Ms. Brito asked A.A. to go to the back of the line. A video taken from the bus's internal cameras on March 12, 2021, confirms that A.A. cut the line that day and was asked to go to the back of the line, which she did without objection. Ms. Brito did not ask any of the other African American students to go to the back of the line, and all other students boarded the bus without incident. No other students can be seen cutting the line.

A.A. felt that Ms. Brito was targeting her and that her actions in asking her to go to the back of the line were racist. A.A. expressed this to her mother, who decided to get proof of Ms. Brito's racist actions. On March 16, Ms. Harris accompanied A.A. to the bus and decided to film her boarding. Both Ms. Harris's recording and the recording from the bus's internal camera were provided to the Court. When the bus pulled up, it was still dark out. A.A. attempted to board first. Ms. Brito asked A.A. to go to the back of the line. A.A. informed her she was at the bus stop first, to which Ms. Brito replied that she had seen A.A. come down the stairs from her house. Ms. Harris replied that Ms. Brito was mistaken, because she had seen her son, not A.A.,

come down the stairs. All parties begin raising their voices; Ms. Harris then accused Ms. Brito of

racism and informed Ms. Brito that A.A. had been at the bus stop since 6:50 A.M. Ms. Brito

replied, "That's a first." A.A., Ms. Harris, and Ms. Brito began arguing. A.A. and Ms. Harris

soon became incensed and yelled at Ms. Brito that she was racist and harassing A.A. Plaintiffs

then asked the other children in line if A.A. had cut them, and the children replied that she had

not. After several more moments of yelling, Ms. Brito asked A.A. if she wanted to ride the

school bus that day. One of the Plaintiffs said, "That's what I thought," and A.A. and Ms. Harris

walked away. Ms. Harris drove A.A. to school, where they met with administrators who

promised to investigate.

Later that evening, Mark Fick, the director of transportation at Warsaw Schools, called

Ms. Harris and informed her that her children were not allowed to ride the bus because they had

disrupted bus services. There is no record of any disciplinary action against A.A. in the school's

records.[1] A.A. did not return to Warsaw Schools after the March 16 incident, and later enrolled

in an online high school education program. A.A.'s brother returned to Warsaw Schools and was

transported on a different bus. (DE 36-4 at 62.)

Ms. Harris brought suit against Warsaw Community School Corporation, Ms. Brito, and

Mr. Fick as next friend of A.A., bringing Equal Protection Clause and Title VI claims. The

allegations in the amended complaint were shocking; in addition to the line issue described

---

[1] Defendants argue that Mr. Fick did not have the authority to ban students from the bus and cite to the August 2021 edition of the school handbook as evidence. (DE 38 ¶ 51.) The citation cannot support this assertion because the handbook post-dates the incident and is thus not probative of the facts for which it is cited. The August 2021 handbook is so unusually explicit regarding transportation issues that the Court wonders if prior versions were revised in response to this incident: "Any infractions will be forwarded to administrators for disciplinary review. Transportation does not impose punishment." (DE 36-7 at 33); "Students are not permitted to record or take pictures on the bus." *Id*. Accordingly, the Court strikes paragraph 51 as not properly supported. *See Mayes v. City of Hammond, IN*, 442 F. Supp. 2d 587, 596 (N.D. Ind. 2006) (courts "may eliminate from consideration any argument, conclusions, and assertions unsupported by the documented evidence of record offered in support of the statement.") In any event, it is immaterial for the purposes of this motion whether Mr. Fick had the authority to ban A.A., because any reasonable person would assume he did.

above, it stated Ms. Brito "at various times" called A.A. a monkey and told her to go to the back

of the bus, and that this behavior was motivated by racial animus. (DE 13 at ¶ 13.) During

discovery, Plaintiffs admitted Ms. Brito never called A.A. a monkey and never told her to go to

the back of the bus, so these allegations are not considered as part of the evidence of racial

animus for the purpose of summary judgment. *See* (DE 36-1 at 9–14); (DE 36-4 at 22–24); (DE

36-1 at DE 18–19); *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005)

(conceded facts contrary to essential allegations cannot support claim at summary judgment).


### B. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine issue as

to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a). A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On summary judgment, the court construes the

evidence in the light most favorable to the nonmoving party and draws all reasonable inferences

in favor of that party. *Id*. "Speculation, however, is not the source of a reasonable inference."

*Burwell v. Pekin Cmty. High Sch. Dist. 303*, 213 F. Supp. 2d 917, 929 (C.D. Ill. 2002) (citing

C*hmiel v. JC Penney Life Ins. Co.*, 158 F.3d 966, 968 (7th Cir.1998). If plaintiff's facts are

"blatantly contradicted by the record, so that no reasonable jury could believe it, a court should

not adopt that version of the facts for the purposes of ruling on a motion for summary judgment."

*Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).

The nonmoving party may not rest on the allegations within the complaint and instead

must provide "definite, competent evidence in rebuttal." *Butts v. Aurora Health Care, Inc.*, 387

F.3d 921, 924 (7th Cir. 2004). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 322–23.

### C.  Discussion

Plaintiffs have made no showing that Defendant's actions were motivated by racial animus, which is required to sustain a claim under both the Equal Protection Clause and Title VI. Plaintiffs failed to meet their burden under numerous steps of the *McDonnell Douglas* inquiry, the only method for proving their claims that they advanced, and failed to present any evidence that would permit a reasonable factfinder to conclude A.A.'s race led to any adverse action. *See Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) (all evidence, direct or indirect, must be evaluated as a whole to determine whether a reasonable factfinder could infer discriminatory animus). Plaintiffs' case rests entirely on speculation and conclusory legal allegations, which cannot sustain a reasonable inference that intentional discrimination took place. *See Khan v. Midwestern Univ.*, 147 F. Supp. 3d 718, 720 (N.D. Ill. 2015). Defendants are therefore entitled to judgment as a matter of law because Plaintiffs have failed to make a showing on essential elements of their claims.

### *(1)  Preliminary Matters*

Plaintiffs did not follow Local Rule 56-1 and have not provided the Court with the requisite correspondingly numbered response admitting or denying each of Defendants' Statement of Material Facts (DE 38) with citations. *See* Local R. 56-1(b)(2). The noncompliance is not minimal; no statement of facts was filed at all. This alone could justify the Court's adoption of Defendants' facts. *See Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that the district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings.")

But the Court, in all fairness to Plaintiffs, has reviewed their response to determine whether any properly supported material factual dispute exists. None does, as Ms. Harris and A.A.'s deposition testimony, the sole support for many key arguments, is internally inconsistent and flatly contradicted by documentary and physical evidence. *See S Indus., Inc. v. Stone Age Equip., Inc.*, 12 F. Supp. 2d 796, 809 (N.D. Ill. 1998) (deposition testimony cannot create issue of fact in similar scenario); *Williams v. Seniff*, 342 F.3d 774, 788 (7th Cir. 2003) (deposition testimony cannot support Equal Protection claim where it is contrary to the requirements of that claim). For example, Ms. Harris testified both that other African American child were and were not treated like A.A. within seconds (DE 36-4 at 20–21) and admitted that she had no personal knowledge of how other children were treated.[2] Internally contradictory deposition testimony alone is insufficient to support key factual issues on summary judgment. *See Manson v. City of*

---

[2] For example, in a line of questioning concerned with whether other children were asked to move seats, she infers racism because she never heard of other students being asked to move (DE 36-4 at 21:23) but also would not have heard of other students being asked to move because it would not necessarily be newsworthy to her daughter (*Id.* at 20:24–25) and because she does not associate with the children (*Id.* at 15:13–14).

*Chicago*, 795 F. Supp. 2d 763, 768–69 (N.D. Ill. 2011). "Were the conflict at issue between statements given by two separate individuals, summary judgment would be inappropriate because the district court may not weigh conflicting evidence. The situation is quite different, however, when a witness has contradicted directly his or her own earlier statements without explaining adequately the contradiction or without attempting to resolve the disparity." *Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168 (7th Cir. 1996) (affirming grant of summary judgment). And Plaintiffs' version of events, such as A.A.'s contention that only she was targeted for where she sat on the bus, is contradicted by the clear video evidence of Ms. Brito assigning all students seats on the bus, regardless of race. The Court therefore declines to adopt this fact on summary judgment. *See Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (declining to adopt plaintiff's facts contradicted by video evidence.) In short, had Plaintiffs submitted a conforming statement of facts under Local Rule 56-1, they still would have not stated a dispute of facts because Plaintiffs' version of events is not capable of being supported by evidence in the record. Therefore, the Court adopts the Defendants' statement of facts (DE 38) as undisputed.

Plaintiffs also belatedly attempted to add other bases for their claims in their summary judgment response under a hostile environment theory. While deliberate indifference to a hostile environment may sustain a claim under Title VI, *see Ervins v. Sun Prairie Area Sch. Dist.*, 609 F. Supp. 3d 709, 722 (W.D. Wis. 2022), the Court will not consider this theory because the facts in support of hostile environment are newly alleged in the summary judgment response and Plaintiffs waived the argument by failing to perform legal analysis. When a new argument on summary judgment changes the complaint's factual theory, the district court has discretion to deny the de facto amendment and refuse to consider new factual claims. *Chessie Logistics Co. v.*

*Krinos Holdings, Inc.*, 867 F.3d 852, 860 (7th Cir. 2017). The new allegations are not merely additional details supporting the complaint's same general theory of the case; to use informal parlance, they come out of left field. While the amended complaint concerns solely Ms. Brito's behavior on the bus and the school's response, the summary judgment motion attempts to add inferences of racial animus from totally unrelated incidents: A.A.'s view of the school's enforcement of the dress code policy and handling of an unrelated incident between A.A. and another student. The Court had never heard of these facts prior to the summary judgment motion — in effect, their addition would convert this school bus discrimination case to an omnibus school discrimination case. *See Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 813 (7th Cir. 2011) (declining to consider new allegations creating a totally different theory of discrimination on summary judgment). In the Court's opinion, adding the claims at this belated juncture would not advance the interests of justice and would constitute unfair surprise to the opposing party.

*See Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) (new allegations in summary judgment response were untimely). Adding entirely new allegations and claims at this stage would force the parties to re-open discovery and litigate matters that could have been addressed earlier; the Court will not force Defendants to essentially play "whack-a-mole" by addressing new claims only after defeating others in this litigation. And further, Plaintiffs waived any claim they might have had by failing to perform any legal analysis regarding whether these new allegations created a hostile environment. *See Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) ("Perfunctory, underdeveloped arguments without discussion or citation to pertinent legal authority are waived."). Accordingly, Plaintiffs will be granted the benefit of only those claims for which they pled a factual basis and defended on summary judgment.

### (2) Title VI Claim

Plaintiffs' Title VI claims fail because they have not offered any evidence of discrimination. Title VI of the Civil Rights Act of 1964 provides that "no person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. "The framework for establishing discrimination under Title VI is similar to the method used for Title VII, under Title VI, a plaintiff may prove discrimination by presenting either direct or indirect evidence of discriminatory intent." *Brewer v. Bd. of Trustees of the Univ. of Illinois*, 407 F. Supp. 2d 946, 970 (C.D. Ill. 2005), *aff'd sub nom. Brewer v. Bd. of Trustees of Univ. of IL*, 479 F.3d 908 (7th Cir. 2007). Though the indirect method is just one way a plaintiff may show discrimination, in this case Plaintiffs relied only upon the indirect method in their response, and so the Court will proceed under the indirect analysis. *See David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017) (indirect method is a common, but not exclusive, method of showing discrimination); *Paul v. Theda Med. Ctr.*, Inc., 465 F.3d 790, 794 (7th Cir. 2006) (proceeding only on the indirect method where plaintiff did not offer direct evidence). However, the Court considers all the evidence when considering whether discrimination has been shown and does not elevate formal tests over the evaluation of probative evidence. *See Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)

Under the indirect, or burden-shifting method, the Court proceeds in the following steps, adopted from *McDonell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The plaintiff must first establish a prima facie case, which in the educational context means the plaintiff must show that (1) she is a member of a protected class; (2) she was

meeting the school's legitimate educational expectations at the time of the disciplinary action; (3) she suffered an adverse educational action; and (4) similarly situated students outside of her protected class were treated more favorably. *Sawyer*, 864 F. Supp. 2d at 720. "If a prima facie case is established, the burden shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for its decision. If the defendant produces such a reason, the plaintiff has an opportunity to show that the articulated explanation was in fact pretext." *Paul v. Theda Med. Ctr., Inc.*, 465 F.3d 790, 794 (7th Cir. 2006).

Plaintiffs fail to both establish a prima facie case and rebut Defendants' legitimate reason for the disciplinary action. Summary judgment is appropriate because several of the identified deprivations do not constitute adverse actions, Plaintiffs have not identified a similarly situated student, and even if this failure is overlooked, Plaintiffs have failed to show any evidence the Defendants' articulated legitimate, non-discriminatory reason for their decision was pretextual, nor have the Plaintiffs submitted any evidence sufficient to infer racial animus.

*(a) The only adverse action stated is denial of bus services.*

As an initial point, to state a prima facie case, the plaintiff must show she suffered an adverse action. *Alamo v. Bliss*, 864 F.3d 541, 552 (7th Cir. 2017). Here, there are several potential adverse actions, and the Court will analyze them in turn. Plaintiffs argue A.A. was banned from the bus service and subsequently was forced to withdraw from school because she lacked transportation. The Court must decide whether A.A. was constructively discharged from school as she claims. The Court must further decide whether A.A. was constructively discharged from receiving bus services, and if a denial of bus services ultimately rises to the level of adverse action. The Court must also decide whether being asked to go to the back of the line itself

constitutes a materially adverse action. The Court analyses these questions in turn and finds only A.A.'s constructive discharge from bus services constitutes an adverse action.

The Court begins with the question of whether A.A. was constructively discharged from school. Plaintiffs argue that A.A. was forced to withdraw from school because she was denied bus services and could not get to school; Plaintiffs seek damages for not only the loss of the bus services, but for the loss of A.A.'s educational opportunities and career prospects. (De 13 at 5.) The uncontested facts show A.A. withdrew voluntarily from Warsaw Community Schools, and never returned to school after March 16, the same day as the incident in question. Under A.A.'s theory of the case, the Court would have to find that she was constructively discharged from school in order for her voluntary withdrawal from school to amount to an adverse action. *Pennsylvania State Police v. Suders*, 542 U.S. 129, 143, 124 S. Ct. 2342, 159 L. Ed. 2d 204 (2004). Constructive discharge occurs where the conditions of school or work are so intolerable that the reasonable employee is forced into an involuntary resignation or where the employer acts in a manner that communicates to a reasonable person that his employment will be terminated. *See Norwood v. E. Allen Cnty. Sch.*, 825 F. App'x 383, 388 (7th Cir. 2020). Plaintiffs do not argue that A.A. believed she would be expelled, so the only question is whether the conditions were intolerable. *See Parks v. Speedy Title & Appraisal Rev. Servs.*, 318 F. Supp. 3d 1053, 1065 (N.D. Ill. 2018). Conditions are intolerable where a reasonable person would be forced into involuntary resignation by the unlawful discrimination. *Tutman v. WBBM-TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1050 (7th Cir. 2000). A finding of intolerable conditions requires the conditions be even more egregious than a hostile work environment. *Fischer v. Avanade, Inc.*, 519 F.3d 393, 409 (7th Cir. 2008).

11

The Court does not find this decision difficult. The facts show A.A. withdrew from school the very same day after the incident with Ms. Brito. Plaintiffs admit A.A. withdrew from school, but argue she was forced to withdraw because the discrimination she faced was intolerable. The Court finds the conditions faced were far below the required threshold. *Compare Chapin v. Fort-Rohr Motors*, *Inc.*, 621 F.3d 673, 679 (7th Cir. 2010) (one threat and raised voices did not create intolerable conditions); *with Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 640 (7th Cir. 2009) (repeated use of a noose and threats of physical violence constituted intolerable conditions). Plaintiffs have not evidenced a hostile environment, much less intolerable conditions. A single, minor wrongful disciplinary action is not intolerable; it is merely the kind of commonplace annoyance of the inevitable sort one encounters when moving through the world. *See Fields v. Bd. of Educ. of City of Chicago*, 928 F.3d 622, 626 (7th Cir. 2019) (no intolerable conditions where employee was disciplined for misconduct but not harassed). A reasonable person may be annoyed by such an event, but she would not feel that it made her schooling so unbearable that she was forced to resign. *Cf. Taylor v. W. & S. Life Ins. Co.*, 966 F.2d 1188, 1191 (7th Cir. 1992) (finding intolerable conditions where plaintiffs were fondled, subject to racial epithets, and one plaintiff had a gun held to his head by his supervisor, who later circulated photos of the incident throughout the office). Therefore, A.A.'s withdrawal from school cannot be the adverse action undergirding her claims.

Next, the Court asks whether A.A. was constructively discharged from riding the bus, and if so, if that constituted an adverse action.[3] It seems obvious to the Court that A.A. was

---

[3] The Court proceeds under constructive discharge because the parties disagree about whether Mr. Fick had the authority to discipline A.A. and whether any discipline was actually implemented. These questions are not necessary to resolve on summary judgment because the undisputed facts indicate she was constructively discharged from receiving bus services.

constructively discharged from riding the bus, because the undisputed facts indicate Mr. Fick called Ms. Harris and told her A.A. was banned from the bus. Whether Mr. Fick had the actual authority to suspend or expel A.A. from the bus is not relevant, because a reasonable person would believe their services would be terminated if they were told as much by the director of services. *See E.E.O.C. v. Univ. of Chicago Hosps.*, 276 F.3d 326, 332–33 (7th Cir. 2002) (constructive discharge where employee reasonably assumed she would be fired when she saw her office had been packed up for her). Given that she was constructively discharged from the bus, the question, then, becomes whether the denial of bus services rises to the level of adverse action. The Court finds it does. Materially adverse actions include "cases in which the employee's compensation, *fringe benefits*, or other financial terms of employment are diminished, including termination." *Nichols v. S. Illinois Univ.-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007) (emphasis added). Transportation to and from school is a fringe benefit with significant impact on the financial terms of attending school. *See Kadrmas v. Dickinson Pub. Sch.*, 487 U.S. 450, 455, 108 S. Ct. 2481, 101 L. Ed. 2d 399 (1988) (in which plaintiffs incurred substantial fees transporting student to school after securing alternatives to school bus). Nothing in the record suggests public school bus services at Warsaw High are a discretionary benefit to which a student is not automatically entitled. Rather, it appears to be the kind of routine and assumed benefit of which deprivation may constitute and adverse action. *See Lewis v. City of Chicago*, 496 F.3d 645, 654 (7th Cir. 2007) (deprivation of compensation otherwise earned constitutes adverse action); *cf. Keen v. Teva Sales & Mktg., Inc.*, 303 F. Supp. 3d 690, 720 (N.D. Ill. 2018) (no adverse action where employee did not automatically qualify for excess insurance benefit). Therefore, the Court finds the school's constructive denial of A.A.'s bus services is a significant deprivation of a financial benefit to which she was otherwise entitled, and therefore

constitutes an adverse action. *Cf. Emeldi v. Univ. of Oregon*, 673 F.3d 1218, 1225 (9th Cir. 2012) (student stated adverse action where essential faculty advisor resigned in retaliation, rendering her unable to complete her degree).

As a final matter, the Court finds that being sent to the back of the line alone or being told to sit in a different seat as it occurred in this case cannot constitute an adverse action. Adverse action is concerned with significant, rather than trivial harms. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006). The Supreme Court explained further that adverse action does not encompass those "petty slights or minor annoyances" that often take place in school or the workplace. *Id.* The only plausible showing of wrongdoing Plaintiffs have made is that A.A. should not have been sent to the back of the line on the day of March 16; it appears the prior discipline was warranted by her cutting. Thus, the discipline alone is extremely petty—brief, incidental, the sort of annoyance that is a fact of life incapable of supporting a federal lawsuit. *See Parks*, 318 F. Supp. 3d at 1068 (being disciplined over non-critical errors is a petty grievance for Title VII purposes). Therefore, the Court does not find being sent to the back of the line constituted an adverse action.

> *(b) Plaintiffs do not identify a similarly situated student outside the class who was treated more favorably.*

Plaintiffs' Title VI claim also fails because they do not identify a similarly situated student who was dismissed from bus services.[4] A prima facie showing under the indirect method

---

[4] Much of the parties' argument is targeted at A.A.'s being sent to the back of the line or withdrawing from school as the proposed adverse actions. In the name of addressing the parties' arguments, the Court has addressed those positions here, but maintains those deprivations alone could not support a Title VI claim in this case even if the other elements of the claim were perfectly evidenced.

requires a plaintiff to identify a similarly situated person of an unprotected class who is treated differently than the plaintiff, who is of the protected class. *Beaulieu v. Ashford Univ.*, 529 F. Supp. 3d 834, 850 (N.D. Ill. 2021) (conclusory statement of discrimination inadequate to state claim under Title VI, but similarly situated allegations would have sufficed). "Similarly situated [persons] must be directly comparable to the plaintiff in all material respects, but they need not be identical in every conceivable way." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012); *see also Brewer v. Bd. of Trustees of Univ. of IL*, 479 F.3d 908, 921–22 (7th Cir. 2007) (students not similarly situated where one's academic struggles were caused, in part, by reliance on advice of a faculty member). The purpose of the similarly situated requirement is "to eliminate all other possible explanatory variables, such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable — discriminatory animus." *Id.* In the educational context, a similarly situated student must exhibit similar conduct. *See Delices v. UW Bd. of Regents*, No. 18-CV-1839-BHL, 2023 WL 2465880, at *11 (E.D. Wis. Mar. 10, 2023) (*citing Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 331 (7th Cir. 2002)).

In order to succeed on their Title VI claim, Plaintiffs would need to show a similarly situated student who did not face removal of her bus services, as that is the only workable adverse action claimed. Plaintiffs' only attempt to identify a similarly situated student is their argument that no other students were sent to the back of the school bus line. That statement alone is insufficient to establish a similarly situated student because it provides no information about the other students' conduct or the actual adverse action, being banned from the bus. *See Little v. Illinois Dep't of Revenue*, 369 F.3d 1007, 1012 (7th Cir. 2004) (no showing of discrimination where no evidence was submitted that anyone else was disciplined or not disciplined). Though Plaintiffs entirely fail to argue any student was allowed to behave as A.A. did without being

banned from the bus, and thus have waived that argument, *see Hannemann v. S. Door Cnty. Sch. Dist.*, 673 F.3d 746, 754 (7th Cir. 2012), the Court will analyze A.A.'s argument that white students were not sent to the back of the line, as that event is at least predicate to the eventual adverse action.

Although an identical student is not required, the student must at least be substantially similar in their conduct history, as school discipline cases frequently turn on the conduct of the student. *See, e.g., Thompson By & Through Buckhanon v. Bd. of Special Sch. Dist. No. 1 (Minneapolis)*, 144 F.3d 574, 581 (8th Cir. 1998) (student's suspensions were motivated by physical assault of other students, not racial animus). Without identifying whether the proposed similarly situated students had a similar disciplinary history — or even a similar single incident — on the bus, it is impossible to isolate discriminatory animus as the lone explanatory variable. *See Beaulieu,* 529 F. Supp. 3d at 850 (impossible to infer discrimination where student treated differently was not engaging in the same conduct as plaintiff). Therefore, due to the confounding variables of A.A.'s disciplinary history on the bus and the failure to identify a similarly situated student who was not similarly disciplined, an inference of racial animus has not been properly supported. *See Sawyer v. Columbia Coll.*, 864 F. Supp. 2d 709, 722 (N.D. Ill. 2012) (no evidence of discrimination where no similarly situated student was identified and student's involvement in altercation justified suspension). No similarly situated student has been identified, and Plaintiffs have failed to state a prima facie case.

Even if the Court, in an excess of generosity, were to attempt to identify a similarly situated student based on the record, including the video submissions, it would fail. To begin with, the parties have not stated whether any other students were banned from the bus, the only adverse action at issue in this case, and the record contains no evidence on this issue. And even if

the Court analyzes the original line-cutting incident, Plaintiffs fair no better. It is true that the undisputed video evidence shows that no other students were told to go to the back of the line. However, it is also true that the March 12 video shows that A.A. was the only student cutting the line. (DE 37-9 at 0:11.) After A.A. is sent to the back of the line, which formed in an orderly fashion based roughly on closeness to the door, the rest of the children get on the bus without incident. (*Id*. at 0:19–37.) The video shows other African American children, including A.A.'s brother, were not told to go to the back of the line; two of the first three children to board the bus without incident appear to be African American. Nothing in the record, which contains several video clips submitted by both parties, a similarly situated person outside the class was treated differently from A.A. The Court is confident that no such person has been identified, and Plaintiff has not made a prima facie showing.

> (c) *Defendants have stated a non-discriminatory reason for the decision, and Plaintiffs have failed to show it was pretextual.*

Even though the inquiry could cease at this juncture because Plaintiffs have failed to make out a prima facie case, the Court also notes Plaintiffs have failed to rebut Defendants' legitimate, non-discriminatory reason for sending A.A. to the back of the line or removing her from the bus. Both parties spend an inordinate amount of time on the reason A.A. was sent to the back of the line. Though that is not an adverse action, the Court will address it, as A.A.'s ultimate constructive dismissal from bus services builds upon that incident. Defendants argue A.A. was sent to the back of the line because she had a history of cutting the line, and that A.A. was banned from the bus for disrupting bus services. In an attempt to discredit these common-sense reasons, Plaintiffs make two arguments, both easily disposed with. First, Plaintiffs argue

the proffered reason for asking A.A. to go to the back of the line was pretextual because A.A. testified there was no line. (DE 42 at 10.) Plaintiffs assert that instead, the students waiting to board stand in some unorganized fashion and take turns boarding the bus. *Id*. at 11. The argument appears to be, "She could not have cut the line, because there was no line, so being asked to go to the back of the line must have been racially motivated." Second, Plaintiffs argue the reason must have been pretextual because A.A. did not cut the line that day. Plaintiffs do not argue Defendants' reason for denying A.A. bus services — that she was disrupting bus services — was pretextual; that reason goes entirely unchallenged. That argument, therefore, is again waived, *see Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012), but the Court will address Plaintiffs' arguments for the sake of completeness.

Plaintiffs' first argument is not convincing. It appears from the school bus's internal camera video the children stand in a line parallel to the bus and board based roughly on who is closest to the school bus door, and they do take turns boarding the bus. (DE 37-9.) As an initial point, it is possible to cut an informal queue, which is why the concept of taking turns resonates at all stages of life, from the playground to merging on the highway. One can determine that someone is behaving unfairly even if one could not precisely determine the proper order of everyone else. So it is not dispositive of any issue whether the line was orderly or less formal. Second, Plaintiffs' entire action presumes the existence of a line; the sole dispute is whether A.A. was forced to go to the back of the line, and Plaintiffs use "line" terminology throughout their filings. *E.g.*, "Plaintiff arrived several minutes early to the bus stop in order to be *first in line* among the mostly white group of students waiting for the bus." DE 13 at ¶ 15; *see also* DE 13 at ¶¶ 13, 16. It is odd, now, to argue as though no line existed, when one's claims are predicated on the existence of the line. Further, if the instruction was "board last," it still could be racially or

neutrally motivated; the use of the informal "line" terminology does not shine any light on Ms. Brito's motives. This argument is insufficient to show the proffered reason is pretextual.

Plaintiffs also argue that the Defendants' reason must be pretextual because A.A. did not cut on the morning of March 16, as corroborated by the videos from that morning. But that misconstrues the argument. Defendants argue A.A. was sent to the back of the line because she had previously cut the line, causing other students to complain; this proffered reason leaves room for Ms. Brito's apparently erroneous decision on March 16. Defendants argue not that A.A. cut the line on March 16, but that Ms. Brito made an individualized assumption on March 16 based on A.A.'s prior behavior. That assumption could be wrong, but as long as it is based on individualized factors and not racial animus, it does not support a Title VI claim. *See Stockwell v. City of Harvey*, 597 F.3d 895, 902 (7th Cir. 2010) "[E]ven if the business decision was unreasonable, pretext does not exist if the decisionmaker honestly believed the nondiscriminatory reason… Subjective evaluations of each candidate are clearly consistent with Title VII"). Plaintiffs' assertion that A.A. did not cut on the morning of March 16 does not address or undercut Defendants' proffered nondiscriminatory reason for the action, which was based on A.A.'s historical pattern of cutting. *See Clay v. Holy Cross Hosp.*, 253 F.3d 1000, 1009 (7th Cir. 2001) (plaintiff's evidence that defendant's belief was wrong did not show defendant's honest belief was pretextual).

Finally, Plaintiffs have not challenged Defendants' proffered reason for banning A.A. from the school bus, which is the only plausible adverse action at issue in this case. Defendants argue that A.A.'s bus services were terminated because she disrupted the school bus route, a legitimate and non-discriminatory rationale. *See Logan v. City of Chicago*, 4 F.4th 529, 537 (7th Cir. 2021) (defendant's singling out of plaintiff for discipline was not automatically

19

discriminatory given plaintiff's prior misconduct history). Plaintiffs have made no showing that this reasoning was pretextual, and the Court's independent review indicates grant of summary judgment is appropriate. When reviewing a bus disciplinary history that includes screaming at a driver, cutting the line, and being late so frequently that the bus route was altered, and where no other student was allowed to behave this way, no reasonable jury would find A.A.'s dismissal from bus services was motivated by racial animus. *Runkel v. City of Springfield*, 51 F.4th 736, 742 (7th Cir. 2022) (The district court "when deciding a motion for summary judgment, should ask whether a reasonable jury could find that the relevant decision was motivated in part by an unlawful criterion.")

Therefore, the Court grants summary judgment on Plaintiffs Title VI claim, as they have not stated a prima facie case or shown the Defendants' legitimate and nondiscriminatory reason for their actions was pretextual, and no other evidence has been offered to show discriminatory animus. As such, no reasonable jury could find an inference of discrimination. *See Ortiz*, 834 F.3d at 765.

### *(3) Equal Protection Claim*

For the same reasons as stated above, Plaintiffs have not shown a violation of the Equal Protection Clause, and Defendants are entitled to summary judgment on this claim. "The Equal Protection Clause of the Fourteenth Amendment prohibits state action that discriminates on the basis of membership in a protected class or irrationally targets an individual for discriminatory treatment as a so-called class of one." *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010). When asserting a race-based equal protection violation, the plaintiff must establish "that a state actor has treated him differently from persons of a different race and that the state actor did

so purposefully." *Billings v. Madison Metro. Sch. Dist.*, 259 F.3d 807, 811 (7th Cir. 2001). The standard for showing intentional discrimination under the Equal Protection Clause is the same as that under Title VI. *Radentz v. Marion Cnty.*, 640 F.3d 754, 757 (7th Cir. 2011) (using *McDonell Douglas* approach for equal protection claim). Because Plaintiffs have thoroughly failed to establish discrimination under *McDonell Douglas* or any other framework, Plaintiffs' equal protection claim also fails. *Williams v. Seniff*, 342 F.3d 774, 791 (7th Cir. 2003) (importing conclusion of inadequate showing under *McDonell Douglas* from Equal Protection claim to summarily decide Title VII claim).

The Court is also satisfied Plaintiffs have not shown impermissible differential treatment based on the precedent of this circuit and of our sister courts, which frequently recognizes non-discriminatory and individualized disciplinary action does not violate the Equal Protection Clause. *See, e.g. Smith on Behalf of Smith v. Severn,* 129 F.3d 419, 429 (7th Cir. 1997) (no showing of discrimination sufficient to sustain an Equal Protection claim where more severely punished student was also the only student to bring a boa constrictor and chainsaw to school); *Sung Park v. Indiana Univ. Sch. of Dentistry*, 692 F.3d 828, 833 (7th Cir. 2012) (other students dissimilarly disciplined for same conduct did not support inference of discrimination where plaintiff had an extensive misconduct history); *Wagner ex rel. Wagner-Garay v. Fort Wayne Cmty. Schools*, 255 F. Supp. 2d 915, 929 (N.D. Ind. 2003) (school may differentiate student discipline based on conduct); *Heller v. Hodgin*, 928 F. Supp. 789, 796 (S.D. Ind. 1996) (no evidence of discrimination where plaintiff's discipline closely followed misconduct and students of different races were subject to the same discipline); *Fuller v. Decatur Pub. Sch. Bd. of Educ. Sch. Dist. 61*, 78 F. Supp. 2d 812, 825 (C.D. Ill. 2000) (plaintiff failed to show discriminatory animus under Equal Protection Clause where white students engaged in the same conduct were

disciplined in the same manner). Therefore, the Court will also grant summary judgment on this claim.

### D.  Conclusion

For the reasons stated above, the Court GRANTS Defendants' Motion for Summary Judgment (DE 38).

SO ORDERED.

ENTERED: June 7, 2023

_____/s/ JON E. DEGUILIO_____
Chief Judge
United States District Court
